[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The defendant Wilbert Peart, hereinafter referred to as acquittee, moves under General Statutes § 17a-593 for release or discharge from the custody and jurisdicton of the Psychiatric Security Review Board ("board"). The board submitted a report dated December 4, 1998 recommending that the court deny the acquittee's request for discharge.[1] The court held a hearing over three days when the state objected to the acquittee's motion and the court heard testimony from a number of witnesses.
Under General Statutes § 17a-593(g), after the hearing the court "shall make a finding as to the mental condition of the acquittee, and, considering that its primary concern is the protection of society" either order the dismissal of the acquittee's motion for discharge or order the acquittee discharged from custody. It is the acquittee's burden to prove by a preponderance of the evidence that he should be discharged. General Statutes § 17a-593(f).
At the hearing the acquittee presented the following witnesses: Gus Michael Athas, a psychiatric social worker with the Northwest Mental Health Authority; Donald Grayson, M.D., a private practitioner in the area of psychiatry; Kathleen Mates, a supervisory employee at Connecticut Valley Hospital; Michael Lambert, supervisory electrician at CVH; Fran LaPerriere, an electrician employed at CVH; Ms. Fawcett, the acquittee's fiancee; the acquittee; and Dolores Sienna, payroll officer at CVH. The state presented one witness, Paul Amble, M.D., CT Page 5721 consulting forensic psychiatrist to the board and a professor of psychiatry at Yale University.
The credible evidence presented shows the following. On July 16, 1991, Wilbert Peart was found not guilty by reason of insanity on the charge of arson in the first degree. On September 5, 1991, he was committed to the jurisdiction of the board for a period not to exceed twenty five years. He was confined to Whiting Forensic Institute until mid 1996 when he was transferred to a less restrictive facility, Dutcher Hall at Connecticut Valley Hospital. He is now residing at Dutcher Hall. During his commitment, the acquittee has been compliant with treatment and has not been disruptive or problematic. He has not been medicated for depression or any emotional illness. He has taken college level correspondence courses in computer training and is employed at CVH as an electrician. His job supervisors and coworkers testified that he is a good worker and a quick learner and that he interacts well with other patients and employees. He has tested negative for substance abuse throughout his commitment and has attended hours of AA and NA meetings. He met his fiancee within the past year, and she is due to give birth to his child mid June 1999.
As of January 18, 1999, Dr. Grayson, the psychiatrist chosen by the acquittee, diagnosed the acquittee using the fourth edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) as follows:
 Axis I: (300.4) Status post Dysthymic Disorder, childhood onset (309.4) Status post Adjustment Disorder with Mixed Disturbance of Emotions and Conduct, chronic (305.00) Alcohol Abuse, in remission (305.20) Cannabis Abuse, in remission (305.70) Amphetamine Abuse, in remission (305.30) LSD Abuse, in remission (305.60) Cocaine Abuse, in remission
Axis II: Because Mr. Peart was only 18 years of age when he was Confined and apparently he has not demonstrated any particular behavior patterns during the past 8 years, I am hard pressed to assign him a Personality Disorder diagnosis. CT Page 5722
 Axis III: Migraine headaches — 8 years — by history Status post bilateral temporomandibular joint surgery for TMJ disease — 1994 — by history Penicillin allergy — by history
 Axis IV: No apparent current stressors except uncertainty regarding duration of continued confinement.
Axis V: GAF: 90
Dr. Amble, the consulting forensic psychiatrist to the board testified to a similar diagnosis. Dr. Grayson opined that the acquittee had no mental disorder and no longer required confinement. Dr. Amble, on the other hand, opined that discharge would be detrimental to the acquittee because he has not shown self-sufficiency and has not sufficiently acknowledged his substance abuse problem.
The statutes governing the psychiatric security review board's jurisdiction include the following pertinent definitions:
 General Statute § 17a-580 (10) "Person who should be confined" means an acquittee who has psychiatric disabilities or is mentally retarded to the extent that his discharge or conditional release would constitute a danger to himself or others and who cannot be adequately controlled with available supervision and treatment on conditional release; (11) "Person who should be discharged" means an acquittee who does not have psychiatric disabilities or is not mentally retarded to the extent that his discharge would constitute a danger to himself or others;
The term "acquittee with psychiatric disabilities" has been substituted for the term "mentally ill acquittee". See § 17a458a. Under the applicable regulations, mental illness is defined as follows:
 "Mental illness" means any mental illness or mental disease as defined by the current Diagnostic and Statistical Manual of Mental Disorders of the American Psychiatric Association and as may hereafter be amended. This definition includes any mental illness in a state of remission which may become active with reasonable medical probability.
Regs., Connecticut State Agencies § 17a-581-2(a)(5). CT Page 5723
The evidence before the court does not support a finding that the acquittee is a person with psychiatric disabilities as defined by statute and regulation. Each of the diagnoses stated by Dr. Amble as to mental disorders was "in remission." There was no evidence that any of these would become active to a reasonable medical probability.
Dr. Amble did testify as did Dr. Grayson that the acquittee would benefit from a transitional program to reintroduce him to society. This seems a reasonable and sensible plan. Unfortunately, that option is not available to the court under the present statutory scheme. It is also troublesome that the acquittee will reenter society with the immediate obligation of new fatherhood. Notwithstanding these concerns, the court is bound by the holding as set forth in Foucha v. Louisiana,504 U.S. 71, 77-8 (1992):
 We held, however, that "[t]he committed acquittee is entitled to release when he has recovered his sanity or is no longer dangerous," i.e., the acquittee may be held as long as he is both mentally ill and dangerous, but no longer. We relied on O'Connor v. Donaldson, 422 U.S. 563, 45 L Ed 2d 396, 95 S Ct 2486 (1975), which held as a matter of due process that it was unconstitutional for a State to confine a harmless, mentally ill person. Even if the initial commitment was permissible, "it could not constitutionally continue after that basis no longer existed." In the summary of our holdings in our opinion we stated that "the Constitution permits the Government, on the basis of the insanity judgment, to confine him to a mental institution until such time as he has regained his sanity or is no longer a danger to himself or society." Jones, 463 US, at 368, 370, 77 L Ed 2d 694, 103 5 Ct 3043.
(Internal citations omitted). Id.
The acquittee has met his burden of proof by a preponderance of the evidence. Pursuant to General Statutes § 17a-593 (g), the court finds that the acquittee does not have psychiatric disabilities as defined under General Statutes § 17a-458a and § 17a-581-2(a)(5) of the Connecticut State Agencies Regs. The court has also considered the protection of society, and based upon the testimony of Dr. Amble as well as the lay witnesses, it finds the acquitee is not a danger to society or to himself. CT Page 5724
The court finds that Wilbert Peart is a person who should be discharged. Therefore, he is discharged from custody of the PSRB.
DiPentima, J.